UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-653-H

TERRESSA L. NEVILLE, *et. al.*                                                PLAINTIFFS

V.

WAL-MART STORES EAST, L.P.                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Terressa L. Neville ("Plaintiff")[1] and her husband Robert D. Neville filed this personal injury suit against Defendant Wal-Mart Stores East, L.P. ("Defendant") alleging negligence and loss of consortium arising out of an injury Plaintiff sustained while shopping at Wal-Mart in Hardinsburg, Kentucky. Defendant's motion for summary judgment raises interesting questions about whether *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431 (Ky. 2003) should apply in these circumstances. The Court has had the benefit of an in-chambers conference on July 18, 2008, at which the parties clarified their positions. For the reasons described below, the Court denies the motion at this time.

I.

The facts stated in a light most favorable to Plaintiff follow. On July 2, 2005 Plaintiff, a homemaker with four children, was shopping in Wal-Mart in Hardinsburg, Kentucky with her

---

[1] Though Terressa Neville's husband is also a Plaintiff in this case, because the analysis here concerns only the negligence claim which is brought by Ms. Neville the Court will refer to her as "Plaintiff."

friend Mary Catherine Brown and her sons Brennan and Trenton Neville who were ten and six years old at the time of the accident. Plaintiff was shopping for spark plugs which were located on one side of Wal-Mart's aisles. A display of trailer hitches was located directly across the aisle from the spark plugs. While Plaintiff and the other persons with her were searching for the correct spark plug she "heard a boom" behind her followed immediately by a "cling." She turned around and saw that her foot was bleeding and that a trailer hitch was on the floor next to her foot. Plaintiff testified about the incident as follows:

> The boom, they were doing displays on the other side of that wall so I didn't see what made that boom, but from the way the aisle looked, I would say it was something being hit or being jarred on that side. We didn't know what it was when it happened. We turned around and like, what in the world, because we heard this boom about the same time almost instantly with the cling and then when [Ms. Brown] looked down, she said, "Oh, my God, your foot."

Pl.'s Dep. 24.

Plaintiff says she had noticed that a young blond female Wal-Mart employee was working on a display one aisle over from where she was standing when the trailer hitch struck her foot. Defendant argues that the location where Plaintiff observed an employee stocking a display was actually located two aisles from the spark plugs, and not directly adjacent to it. Plaintiff testified that the same Wal-Mart employee she had observed working on the display apologized to the Wal-Mart manager while the manager was offering Plaintiff assistance after the incident. Plaintiff described:

> The whole time I'm sitting in his chair, the young girl that's on this side is behind me in his ear saying, Oh, my God, I'm so sorry. I'm so sorry. He kept telling her to shut up, go on, we'll deal with it, we'll talk about it later . . . He said hush. He did say hush. He did not say shut up, no. He said hush, be quiet, we will talk about this later. We'll deal with this later.

Pl.'s Dep. 38-39.

Plaintiff was treated for her foot injury at Breckinridge Memorial Hospital where she received stitches which were later removed by her primary care physician. Her primary care physician referred her to a practice called Advanced Foot and Ankle for treatment of her injuries. Advanced Foot and Ankle placed her in a removable cast and referred her to physical therapy. Approximately a year following the injury Plaintiff still experienced pain and was diagnosed with Achilles tendonitis, flexor digitorum longus tendonitis and posterior tibalis tendonitis of the left ankle. She was later diagnosed with tarsal tunnel syndrome of the left ankle and continues to experience pain with increased activity.

II.

With discovery complete, Defendant asks the Court to enter summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id*. Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element

essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing FED. R. CIV. P .56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III.

To establish a prima facie case of negligence, Plaintiff must prove: (1) that the Defendant owed a duty to Plaintiff; (2) that it breached that duty; (3) that breach was a proximate cause of Plaintiff's injuries; and (4) Plaintiff's injuries resulted in damages. *Helton v. Montgomery*, 595 S.W.2d 257, 258 (Ky. Ct. App. 1980). Under Kentucky law:

> a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he: (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees; and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect them against the danger.

*Lanier,* 99 S.W.3d at 432-33 (quoting Restatement (Second) of Torts § 343 (A.L.I. 1965)). Under these principles, a business owner has an affirmative duty to exercise reasonable care to inspect for hazardous conditions. *Id.* at 433.

Plaintiff alleges that Defendant failed to discover "the presence of an unsecured product display [which] created a dangerous condition on the business premises." The trailer hitches

were stored in "gravity feed bins" - shelving apparatus in which the hitches were placed at a downward angle with the rear of the hitch points toward the floor. During the in-chambers conference, the parties agreed that when the hitches are stored in their normal position, the gravity feed bins would absolutely prevent the hitches from falling. No one knows the location or actual circumstance of the particular trailer hitch that struck Plaintiff. The only evidence suggesting that the trailer hitch display was "unsecured" prior to the incident is the fact that a trailer hitch struck her foot.

At this stage, the survival of Plaintiff's claim depends on whether the burden-shifting approach in "slip and fall" premises liability cases announced by the Kentucky Supreme Court in *Lanier* applies in these circumstances. Plaintiff argues that it does. Under *Lanier* a business invitee has the initial burden of proving that: (1) there was a foreign substance/object on the floor of the premises that; (2) was a substantial factor in causing an accident or injury. *Id.* at 435. Proof of these elements creates a rebuttable presumption of negligence sufficient to avoid summary judgment. The burden then shifts to the premise owner to prove that its employees did not cause the substance/object to be on the floor *and* that it had been there for an insufficient length of time to have been discovered and removed or warned of. *Id.*

Prior to *Lanier*, the plaintiff in a Kentucky slip and fall case bore the burden of demonstrating that the proprietor caused the foreign substance or in the exercise of due care could have discovered it and removed it or warned of it. *Id.* at 433. The Kentucky Supreme Court has yet to address whether *Lanier* is limited to slip and fall cases or whether it also applies in falling merchandise cases. *But see Woltman v. Pepsi MidAmerica Co.*, 2008 WL 2038880 (W.D. Ky. May 12, 2008)(surveying Kentucky law and concluding that "the application of

5

*Lanier* is limited to slip and fall cases brought by business invitees who have been injured as a result of slipping on a foreign substance" and declining to extend it *Lanier* to a falling merchandise case). Certainly, there are conceptual differences between a spilled substance and a falling product in these circumstances.

A slip and fall results from a static and readily identifiable dangerous condition (i.e. a spilled substance), a falling merchandise injury results from a dynamic event (here a falling trailer hitch) from a display whose general safety is not challenged. When a person slips on a foreign substance on a floor, the very presence of that substance establishes that a dangerous condition existed prior to the fall. *Lanier* simply shifts the burden to the defendant to explain why it did not have adequate notice to remedy the dangerous situation (the foreign substance on the floor in slip and fall cases). Implicit in this calculus is the recognition that the condition was not only dangerous, but also was of the type that is at least potentially discoverable by the exercise of reasonable care – in the case of liquid substance on the floor, it is visible and discoverable to an employee looking for such a danger. Neither of these assumptions fits so precisely in our circumstances.

Here, although no direct evidence supports Plaintiff's allegation that the hitches were stored in an "unsecured product display," both parties agree that the trailer hitch would not have fallen had it been properly shelved. No doubt the fact that the trailer hitch fell may give rise to a permissible inference that it was in a dangerous condition before it fell. However, it is questionable whether the same facts also permit an inference that the dangerous condition was discoverable (like a puddle of liquid) or whether it could have gone unnoticed even through the exercise of reasonable care in maintaining the premises.

Thus, the Court concludes that Plaintiff must bear the burden of establishing that a *discoverable* dangerous condition preceded the trailer hitch striking her. This inquiry precedes the separate and subsequent question of whether a condition existed for a sufficient length of time before it injured Plaintiff such that Defendant *should* have discovered it.[2] If upon consideration of the evidence, a jury is satisfied that a dangerous condition existed which *could have been* discovered (like a puddle of liquid) prior to the trailer hitch striking Plaintiff, this case would resemble a *Lanier* slip and fall case and the logic behind the burden-shifting instruction would apply with equal force to the facts here. On the other hand, in the absence of proof that a dangerous and discoverable condition preceded her injury, Plaintiff would not be entitled to a *Lanier* presumption of negligence.[3]

Overall, the question of whether Plaintiff has presented enough evidence to permit reasonable and favorable inferences of Defendant's liability under Kentucky law is a very close one. The Court retains serious questions about whether Plaintiff can show that the condition was both dangerous and discoverable. The Court reserves the right to reconsider its views as to the viability of this claim after hearing the evidence.

---

[2] Presumably, Plaintiff could present evidence that the size or shape of the trailer hitch is such that were it shelved improperly, it would be noticeable.

[3] Plaintiff also argues that "a jury could infer that the Wal-Mart employees in the adjacent aisle did something to cause the 'boom' which, in turn, caused the trailer hitch to fall and strike the Plaintiff on the back of her leg." This testimony could support two theories. The first is that Defendant's employee was negligent in creating a "jostle" strong enough to dislodge a properly stored trailer hitch located one aisle over. The evidence to support this theory is limited to Plaintiff's own recollection. Plaintiff's testimony on this matter conflicts with Defendant's evidence that the aisle where she observed the employee stocking merchandise was further away as well as the employee's testimony that she was behind a counter cutting a key when the accident occurred. The other, slightly stronger theory is that the trailer hitch was already improperly shelved or "unsecured" when Defendant's employee allegedly caused the "boom." The second theory is premised on the existence of a "dangerous condition" which Defendant could have discovered by exercise of reasonable care.

IV.

Plaintiff also argues that the doctrine of res ipsa loquitur applies to this case. Res ipsa loquitur means "the thing speaks for itself" and is invoked when the facts and circumstances are such that a party's negligence can be inferred even in the absence of expert testimony. *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992). The doctrine applies when:

> (1) the defendant has full management of the instrumentality which caused the injury;
> (2) the circumstances must be such that, according to common knowledge and the experience of mankind, the accident could not have happened if those having control and management had not been negligent; and
> (3) the plaintiff's injury must have resulted from the accident.

*Clark v. Schindler Elevator Corp.*, 2007 WL 679042 (W.D. Ky. Mar. 1, 2007)(citing *Vernon v. Gentry*, 334 S.W.2d 266, 268 (Ky. 1960)). If an event satisfies the requirements of res ipsa loquitur, those characteristics "may constitute credible proof of a negligent act or omission, that is to say, from the event or occurrence itself one may reasonably infer the existence of a defect or the failure to observe a duty." *Ferrell v. Hellems*, 408 S.W.2d 459, 462 (Ky. 1966)(citing *Bell & Koch, Inc. v. Stanley*, 375 S.W.2d 696 (Ky. 1964). Res ipsa loquitur does not apply here because the first element is not satisfied. Kentucky courts have applied res ipsa loquitur where the defendant has "full" or "exclusive" control of the instrumentality. *See, e.g., Sadr v. Hager Beauty School, Inc.,* 723 S.W.2d 886, 887 (Ky. 1987)(requiring that defendants have "full control" of the instrumentality); *Helton v. Forest Park Baptist Church*, 589 S.W.2d 217, 219 (1979)(requiring that the instrumentality be under the "exclusive control of the defendant")(citations omitted). Here, Defendant is a self-service store open to the public who has free access to handle the merchandise including the trailer hitch which allegedly struck Plaintiff. Thus, the "instrumentality" (here the trailer hitch) was not under the "full

management" of Defendant. Perhaps most obviously another customer could have picked up and improperly replaced the trailer hitch in its display unit.

Plaintiff argues that there is no evidence that any other person was within the vicinity of the trailer hitch prior to the injury and that "it is not normal for trailer hitches to simply fall and strike customers," but in a self-service context, another person could have foreseeably handled the merchandise just prior to Plaintiff's arrival in that aisle. This Court is not alone in concluding that Kentucky's doctrine of res ipsa loquitur does not apply in the case of falling merchandise. *See, e.g. Graham v. Wal-Mart Stores, Inc.*, 230 F.3d 1358 (6th Cir. 2000)(affirming by table opinion Judge McKinley's decision that res ipsa does not apply to falling merchandise case in Wal-Mart because the general public has "unfettered access" to the goods).

V.

Defendant argues that in the absence of either a *Lanier* burden shift or the application of res ipsa loquitur presumption, Plaintiff cannot adduce evidence as to the condition of the trailer hitch before it fell or what caused it to fall and therefore cannot establish that Defendant breached its duty to exercise ordinary care. Though it is true that "it is never proper to submit a case to the jury where the finding of negligence would be merely conjectural or guesswork" *McAtee v. Holland Furnace Co.*, 252 S.W.2d 427, 429 (Ky. 1952), if the jury credits Plaintiff's testimony regarding the "boom" immediately preceding the trailer hitch's fall, her recollection that an employee was stocking a display in the adjacent aisle and that the same employee later apologized to the store manager, and the evidence regarding the stability of the properly shelved trailer hitches, a jury could reasonably infer that the trailer hitch fell due to some combination of

9

Defendant's employee's negligence in stocking a near-by display or in failing to discover an unsecured product display.

True, such a conclusion would also require the jury to discredit Defendant's testimony as to the relative locations of the employee who was allegedly stocking merchandise and the place of injury, as well as the effect of a "bump" test which Defendant conducted on the display subsequent to the accident. Though this is relatively scant evidence, it is not, as Defendant characterizes it, a "total lack of evidence." Thus, the facts here are distinguishable from cases where there was no evidence of how an accident occurred and a jury would be left to speculate as to how an accident occurred. *See Hicks v. Fontaine Ferry Enter.*, 247 S.W.2d 493, 495 (Ky. 1952)(noting that a jury may deduce reasonable inferences, but a decision may not be rested upon "unreal" "remote" or "pyramided" inferences). And, as discussed above, if Plaintiff can establish that a discoverable dangerous condition preceded her injury, she is entitled to a *Lanier* presumption of negligence.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED.

This is NOT a final order.

cc:     Counsel of Record